UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Ronald Desilets

   v.                                  Civil No. 15-cv-303-LM
                                     Opinion No. 2016 DNH 070
Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration


**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Ronald Desilets moves to reverse the Acting Commissioner's decision to deny his application for Social Security disability insurance benefits (or "DIB") under Title II of the Social Security Act, 42 U.S.C. § 423.  The Acting Commissioner, in turn, moves for an order affirming her decision.  For the reasons that follow, the decision of the Acting Commissioner, as announced by the Administrative Law Judge ("ALJ"), is affirmed.

**I. Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g). However, the court "must uphold a denial of social security disability benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted). Moreover, the court "must uphold the [Acting

2

Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam). Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts. That statement, document no. 11, is part of the court's record and will be summarized here, rather than repeated in full.

Desilets applied for DIB in December of 2012, alleging that he became disabled on December 15, 2011. He later amended his alleged onset date to June 12, 2012. In his Disability Report, he listed the following medical conditions as limiting his ability to work: degenerative disk disease, mitral valve prolapse,[1] diabetes, rotator cuff tears, knee problems, depression, and Tourette's syndrome. He did not list obesity, and he has never been diagnosed with obesity or treated for that

---

[1] Desilets' Disability Report actually lists "matril valve prolapse," but the court presumes that the person who completed the form intended to use the word "mitral" rather than "matril."

3

condition. He has occasionally received something called "BMI [body mass index] management," Administrative Transcript (hereinafter "Tr.") 760, 763, 811, and has received counseling on diet and exercise, but only in the context of preventative care, never as a treatment.

In February of 2013, Dr. Burton Nault, a state agency consultant who did not examine Desilets, performed an assessment of Desilets' residual functional capacity ("RFC"),[2] based upon a review of Desilets' medical records. The Disability Determination Explanation form that reports Dr. Nault's RFC assessment lists diagnoses of degenerative disc disease, diabetes mellitus, and obesity, which indicates that Dr. Nault considered all three of those conditions, including obesity, when he assessed Desilets' RFC. In his assessment, Dr. Nault opined that Desilets could lift and/or carry 20 pounds occasionally and 10 pounds frequently, and could stand and/or walk, and could sit, both with normal breaks, for about six hours in an eight-hour workday. Dr. Nault also opined that Desilets had no postural, manipulative, visual, communicative, or environmental limitations.

---

[2] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

In March of 2013, after Dr. Nault had assessed his RFC, Desilets complained about pain in his right shoulder to his primary care provider, Dr. John Ford.  Dr. Ford referred Desilets to Dr. Paul Kamins.  Dr. Kamins initially diagnosed Desilets with rotator cuff syndrome, not otherwise specified.  He operated on Desilets' right shoulder in October of 2013, and his operative report included a postoperative diagnosis of adhesive capsulitis.[3]  After the operation, Desilets was treated with pain medication, injections, home exercise, and occupational therapy.

In March of 2014, Dr. Kamins completed a Medical Source Statement on Desilets.  That statement lists a diagnosis of low back pain and notes an "MRI showing disc degeneration & bulging with some foraminal stenosis."  Tr. 924.  Dr. Kamins identified exertional, postural, and manipulative limitations that were greater than those identified by Dr. Nault, but he also opined that Desilets had "no problems" reaching with his arms.  Tr. 927.

In March of 2014, Dr. Ford completed a Physical Impairment Medical Source Statement on Desilets.  Like Dr. Kamins, Dr. Ford

---

[3] Adhesive capsulitis is "a condition in which joint motion becomes restricted because of inflammatory thickening of the capsule [and is] a common cause of shoulder stiffness." Stedman's Medical Dictionary 303 (28th ed. 2006).  "Adhesive capsulitis" is synonymous with "frozen shoulder."  Id.

5

identified greater exertional, postural, and manipulative limitation than Dr. Nault did.  But, unlike Dr. Kamins, who found that Desilets had no problems reaching with his arms, Dr. Ford opined that Desilets could reach with his left arm for only 10 percent of an eight-hour workday and reach with his right arm for less than 10 percent of an eight-hour workday.

After the Social Security Administration denied Desilets' application for DIB, he received a hearing before an ALJ.  At that hearing, Desilets testified that he weighed 264 pounds, and that his weight was down a little from what it had been several years earlier.  He gave no further testimony on his weight or its effect on his ability to perform work-related activities.

Later in the hearing, the ALJ posed a question to a vocational expert ("VE") that described a hypothetical worker with various physical limitations, including this: "overhead reaching and reaching behind the back would be limited to occasional with the right dominant upper extremity."[4]  Tr. 134.  In response, the VE testified that a person with the RFC the ALJ described would be able to perform light-duty unskilled jobs such as cashier, price marker, and collator operator.  When Desilets' counsel asked the VE to consider a person with the RFC

---

[4] For the purpose of assessing the RFC of a social security claimant, "occasionally" means up to one third of an eight-hour day.  See Tr. 144, 754, 925.

6

described by the ALJ but for whom "use of the dominant arm for reaching would be less than 10 percent of an eight-hour workday," Tr. 137, the VE testified that such a person would not be able to perform the three jobs he had previously identified, and could not perform any other light-duty work.

After the hearing, the ALJ issued a decision that includes the following assessment of Desilets' RFC:

> 5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that he can lift and carry twenty pounds occasionally and ten pounds frequently; stand or walk for six hours in an eight-hour day with normal breaks and sit for six hours in an eight-hour day with normal breaks; and push and pull with the lower extremities within the weight limitation above.  He can never climb ladders, ropes, or scaffold[s]; never be exposed to hazards; and only occasionally reach overhead with the right upper extremity.  Due to symptoms and reported pain, he would be limited to uncomplicated tasks, meaning tasks that can typically be learned in thirty days or less and he could sustain concentration, persistence, or pace for two-hour blocks of time throughout an eight-hour day consistent with regularly scheduled breaks and lunch.

Tr. 87.  In discussing her RFC assessment, the ALJ indicated that she gave "greater weight" to Dr. Nault's opinion, Tr. 91, "lesser weight" to Dr. Kamins' opinion, id., and "limited weight" to Dr. Ford's opinion, Tr. 92.  However, she also stated that she "allowed additional limitations in the residual functional capacity [beyond those determined by Dr. Nault] . . . limiting the claimant to only occasional overhead reaching with

7

the right upper extremity in light of his more recent shoulder surgery." Tr. 91.

### III. Discussion

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). The only question in this case is whether Desilets was under a disability from June 12, 2012, through March 29, 2014.

To decide whether a claimant is disabled for the purpose of determining eligibility for DIB, an ALJ is required to employ a five-step process. See 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 404.1520).

8

The claimant bears the burden of proving that he is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).  However,

> [o]nce the [claimant] has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the [claimant] can still perform. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).

Seavey, 276 F.3d at 5 (parallel citations omitted).  Finally,

> [i]n assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the claimant or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

B. Desilets' Claims

Desilets claims that the ALJ erred in assessing both his RFC and his credibility.  Neither claim is meritorious.

1. RFC

Desilets claims that the ALJ erred in assessing his RFC by interpreting raw medical data and by failing to consider his obesity. The court considers each claim in turn.

a. Raw Medical Evidence

Without specifically identifying the particular functional capacities at issue, Desilets claims that the ALJ erred by basing her RFC assessment on the interpretation of raw medical data, which is impermissible. His argument goes like this: (1) the treatment he received after Dr. Nault assessed his RFC generated medical records that Dr. Nault was unable to consider and factor into his RFC assessment; (2) the existence of those new medical records stripped Dr. Nault's opinion of its status as substantial evidence supporting the ALJ's RFC assessment; and (3) without Dr. Nault's opinion to rely upon, and given the limited weight she afforded the opinions of Drs. Kamins and Ford, the ALJ necessarily based her RFC assessment on her own lay interpretation of the medical records generated after Dr. Nault rendered his opinion.

The Acting Commissioner acknowledges that "[a]n ALJ, as a lay person, cannot interpret a claimant's medical records to determine his RFC." Resp't's Mem. of Law (doc. no. 10-1) 3 (citing Manso-Pizarro, 76 F.3d at 17). But she contends that this is a case in which the ALJ permissibly "render[ed] common-

sense judgments about functional capacity based on medical findings [that did] not overstep the bounds of a lay person's competence."  Gordils v. Sec'y of HHS, 921 F.2d 327, 329 (1st Cir. 1990).

The ALJ's RFC assessment withstands judicial scrutiny because it is supported by substantial evidence.  As the court has noted, Desilets claims that the ALJ erred in assessing his RFC, but does not specify the particular functional capacity the ALJ erroneously ascribed to him.  Given Desilets' focus on the fact that Dr. Nault's opinion did not consider the condition of his right shoulder, and the question that Desilets' counsel posed to the VE concerning a person who could reach with his dominant arm for less than 10 percent of a workday, the court understands Desilets to be claiming that the ALJ erred by determining that his RFC included the ability to "occasionally reach overhead with the right upper extremity."  Tr. 87.  That finding, however, is supported by substantial evidence.

The record includes two medical opinions on Desilets' capacity for lifting that postdate his shoulder surgery.  Dr. Ford opined that Desilets could reach with his left arm for 10 percent of an eight-hour workday, and could reach with his right arm for less than 10 percent of an eight-hour workday.  But Dr. Kamins, the surgeon who performed the operation on Desilets' right shoulder, opined that Desilets had an unlimited capacity

for reaching with either arm.  Dr. Kamins' opinion, in turn, is substantial evidence that supports the ALJ's finding that Desilets had the capacity to reach overhead with his right arm for up to one third of an eight-hour workday.

Claimant, however, argues that by determining that he had the RFC to occasionally reach overhead with his right arm, "the ALJ chose an improper 'middle path' between the State Agency opinion and the treating source opinions."  Cl.'s Mem. of Law (doc. no. 9-1) 9.  That argument, however, rests on the premise that both treating source opinions assigned Desilets the same capacity for reaching with his arms, but they did not.  Dr. Kamins opined that Desilets had an unlimited capacity for reaching.  So, if anything, the ALJ charted a middle path between Dr. Kamins' opinion (unlimited reaching) and Dr. Ford's opinion (reaching for no more than 10 percent of an eight-hour workday).  Because the ALJ did not need to interpret any raw medical evidence to make a choice between those two opinions, this case does not involve the situation presented in a typical "split-the-difference" case.  See, e.g., Kaylor v. Astrue, No. 2:10-cv-33-GZS, 2010 WL 5776375 (D. Me. Dec. 30, 2010), R. & R. adopted by 2011 WL 487844 (Feb. 7, 2011) (vacating ALJ's decision and remanding where ALJ rejected state agency consultant's RFC because it did not account for subsequent

medical evidence and then interpreted that evidence herself to fashion RFC).

In sum, the ALJ's assessment of Desilets' capacity for reaching is supported by substantial evidence. Accordingly, remand for a further assessment of that functional capacity is not warranted.

### b. Obesity

Desilets also claims that this case should be remanded because "[t]he ALJ did not mention [his] obesity and therefore failed to consider it." Cl.'s Mem. of Law (doc. no. 9-1) 11. The thrust of his argument is that "[t]he ALJ should have considered how [his] obesity affected his sustained functioning when combined with his spinal and shoulder injury." Id. at 12. The court is not persuaded.

"[A]n ALJ is required to make an assessment 'of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.'" Newell v. Colvin, No. 12-CV-480-S, 2014 WL 546761, at *5 (D.N.H. Feb. 10, 2014), at *5 (quoting Social Security Ruling 02-1p, 2002 WL 34686281, at *6 (S.S.A. Sept. 12, 2002)). However, an ALJ can satisfy her obligation to assess the effect of obesity without specifically discussing obesity, so long as she "relies upon the opinions of medical experts who have taken the claimant's obesity into consideration." Id. at

13

\*6 (emphasis in the original) (citing Drake v. Astrue, 443 F. App'x 653, 657 (2d Cir. 2011); Skarbek v. Barnhart, 105 F. App'x 836, 840 (7th Cir. 2004)).

Desilets concedes that Dr. Nault considered his obesity when performing his RFC assessment, and the ALJ relied upon Dr. Nault's opinion. But Desilets contends that Dr. Nault's consideration of his obesity is irrelevant because his claim is based upon conditions that developed after Dr. Nault assessed his RFC. Indeed, "[a] state agency consultant's opinion that is based on an incomplete record, when later evidence supports the claimant's limitations, cannot provide substantial evidence to support the ALJ's decision to deny benefits." Bell v. Astrue, No. 11-cv-45-PB, 2012 WL 124841, at \*8 (D.N.H. Jan. 17, 2010) (citing Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007); Padilla v. Barnhart, 186 F. App'x 19, 21 (1st Cir. 2006); Russell v. Astrue, 742 F. Supp. 2d 1355, 1378-79 (N.D. Ga. 2010); L.B.M. ex rel. Motley v. Astrue, No. 1:08-cv-1354-WTL-DML, 2010 WL 1190326, at \*13 (S.D. Ind. Mar. 23, 2010)). At the same time, however, "[i]t [is] up to [the claimant] to specifically allege how his obesity affected his ability to work during the period in question." O'Dell v. Astrue, 736 F. Supp. 2d 378, 390 (D.N.H. 2010). Given the circumstances of this case, Bell does not aid Desilets, and O'Dell eviscerates his

14

claim that the ALJ committed reversible error by failing to mention his obesity.

Bell does not deprive the Acting Commissioner of the benefit of the rule that an ALJ adequately considers obesity by relying upon the opinion of a medical expert who has considered obesity.  That is because Desilets identifies no medical evidence that came into existence after Dr. Nault gave his opinion that might support obesity-based limitations beyond those incorporated into the ALJ's RFC.  After Dr. Nault rendered his opinion in February of 2013, Desilets received medical treatment for a number of conditions, but he was never diagnosed with obesity or treated for it.  No medical record even describes Desilets as being obese or overweight.  On several occasions, he was given counseling on diet and exercise, but always in the context of preventative medicine, not treatment.  In short, there is nothing in the medical record developed after Dr. Nault gave his opinion that is related to obesity, either alone or in combination with other impairments, that could possibly have supported greater functional limitations than those Dr. Nault identified.  For his part, Desilets does not even attempt to identify any such evidence.

Turning from Bell to O'Dell, Desilets criticizes the ALJ for failing to consider his obesity, but he did not identify obesity as a disabling impairment in his application for

15

benefits, and he offered no testimony about the effects of obesity at his hearing. Moreover, neither of the two treating sources who offered opinions on Desilets' RFC listed obesity as a diagnosis. Thus, as with the claimant in O'Dell, "it was up to [Desilets] to specifically allege how his obesity affected his ability to work during the period in question, and he failed to meet that burden." 736 F. Supp. 2d at 390. Accordingly, the manner in which the ALJ handled Desilets' obesity gives the court no reason to remand this case.

### 2. Credibility

In her decision, the ALJ noted Desilets' allegation "that his combination of impairments render[ed] him totally disabled." Tr. 88. But, she went on to determine that while "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms [i.e., disabling pain and fatigue]; . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Id. Desilets argues that the ALJ's credibility assessment was not supported by substantial evidence because the ALJ "fail[ed] to cite specific findings from the relevant time period." Cl.'s Mem. of Law (doc. no. 9-1) 10. That argument is factually incorrect and, consequently, unavailing.

Claimant bases his argument on the revision of his alleged onset date from December 15, 2011, to June 12, 2012, and the ALJ's citation of evidence concerning events prior to June 12 in support of her credibility assessment.  Claimant is correct in pointing out that the ALJ's decision refers to his statements about stopping work in December of 2011 for reasons other than his physical impairments.  While claimant now alleges that he did not become disabled until six months after he stopped working, it is far from clear that statements about why he stopped working in December of 2011 have no probative value for assessing the credibility of statements claimant made about his ability to work in June of 2012.  Be that as it may, the ALJ supports her credibility assessment with all manner of relevant evidence from after June 12, 2012, such as: (1) an X-ray from April 2013; (2) an MRI from June 2013; (3) reports claimant made of his daily activities in June or July of 2012; and (4) observations made by physicians in September 2012, March 2013, June 2013, and February 2014.  Thus, claimant's argument fails as a factual matter; even if the ALJ did cite some evidence concerning events that took place before his alleged onset date, she also relied upon a considerable amount of evidence from after that date to support her credibility assessment.  Because the ALJ's credibility assessment is supported by substantial evidence, her citation of some arguably irrelevant evidence

17

gives the court no cause to remand this case for a new credibility assessment.

## IV. Conclusion

Because the ALJ committed neither a legal nor a factual error in evaluating Desilets' claim, see Manso-Pizarro, 76 F.3d at 16, his motion for an order reversing the Acting Commissioner's decision, document no. 9, is denied, and the Acting Commissioner's motion for an order affirming her decision, document no. 10, is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

    SO ORDERED.

                                            Landya McCafferty
                                            United States District Judge

April 1, 2016

cc:   Laurie Smith Young, Esq.
       Michael T. McCormack, Esq.